# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

In Re:

**Case No.: 09-14541 (PJW)**

**AEROTHRUST CORPORATION AND**    **Chapter 11**
**AEROTHRUST ENGINE LEASING**
**HOLDING COMPANY, LLC**    **(Jointly Administered)**

**Debtors and Debtors-in-Possession**

_____/

## DECLARATION OF J. SCOTT VICTOR IN SUPPORT OF THE APPLICATION FOR AN ORDER TO EMPLOY AND RETAIN SSG CAPITAL ADVISORS, LLC AS FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, EFFECTIVE AS OF JANUARY 27, 2010

I, J. Scott Victor, state:

1.    I am a founding partner and Managing Director of SSG Capital Advisors,

LLC ("SSG"), a Pennsylvania limited liability company, which maintains offices at Five

Tower Bridge, Suite 420, 300 Barr Harbor Drive, West Conshohocken, PA 19420.

2.    I submit this Declaration in support of the Application (the "Application")

For An Order Authorizing The Employment And Retention of SSG as Financial Advisor

to the Official Committee of Unsecured Creditors (the "Committee") effective as of

January 27, 2010 under the terms and conditions set forth in the Application.

3.    Except as otherwise provided below, the facts set forth in this declaration

are based upon my personal knowledge, upon records maintained by SSG or by me in the

ordinary course of business. .

4.    SSG is a nationally recognized investment bank with extensive

experience helping middle market companies as well as their stakeholders complete

challenging financial transactions. SSG offers advisory services in the areas of private

placements, mergers and acquisitions, financial restructurings, and complex valuations. SSG's financial restructuring services include renegotiating existing senior and subordinated credit facilities, restructuring unsecured creditor obligations, restructuring equity, and restructuring new debt and new investments to supplement capital needs of restructured entities. SSG also specializes in, among other things, the sale of middle market companies and their assets, divisions, and subsidiaries in chapter 11 proceedings. SSG has (i) extensive knowledge of potential strategic and financial buyers interested in the Debtor's industry; (ii) substantial special situation sell-side investment banking experience; and (iii) extensive restructuring experience.

5.    SSG has served as investment bank and financial advisor to numerous financially distressed companies, and has developed a strong reputation for its work in insolvency proceedings and out-of-court restructurings. SSG has served as an investment banker in a number of bankruptcy cases in the Third Circuit, including, *inter alia*: PCAA, Case No.10-10250 (MFW) (Bankr. D. Del. January 28, 2010), Philadelphia Newspapers, LLC, Case No. 09-11204 (SR) (Bankr. D. E.PA February 22, 2009) (sale monitor); Bamboo Abbott, Inc., t/a Prestige Window Fashions, Case No. 09-28689 (MBK)(Bankr. D.N.J. August 20, 2009); Big 10 Tires Stores, Inc., Case No. 09-11176 (CSS) (Bankr. D. Del. April 2, 2009); Ritz Camera, Case No. 09-10617 (MFW) (Bankr. D. Del. February 22, 2009) (buy side); Diamond Glass, Inc., Case No. 08-10601 (CSS) (Bankr. D. Del. April 1, 2008); Boscov's Inc., Case No. 08-11635 (KG) (Bankr. D. Del. Aug. 8, 2008) (buy side); Zestra Laboratories, Inc., Case No. 08-11313 (KJC) (Bankr. D. Del. June 29, 2008); Shapes/Arch Holding L.L.C., Case No. 08-14631 (GMB) (Bankr. D.N.J. March 16, 2008); Marcal Paper Mills, Inc., Case No. 06-21886 (MS) (Bankr. D.N.J. November

30, 2006); Nobex Corp., Case No. 05-20040 (CSS) (Bankr. D. Del. Dec. 1, 2005);

Pharmaceutical Formulations, Inc., Case No. 05-11910 (MFW) (Bankr. D. Del. July 11,

2005); The Glass Group, Inc., Case No. 05-10532 (KG) (Bankr. D. Del. Feb. 28, 2005);

American Business Financial Services, Inc., Case No. 05-10203 (MFW) (Bankr. D. Del.

Jan. 21, 2005); Coram Healthcare Corp., Case No. 00-03299 (MFW) (Bankr. D. Del.

August 8, 2000).  As a result, the Debtors believe that SSG is well qualified to perform

these services and represent the Debtors' interests in these Chapter 11 Cases.

      6.    SSG's advisory services will be provided primarily by a team led by

myself and my partner Robert C. Smith.  I am a founding partner and Managing Director

of SSG.  I have over 25 years experience as an investment banker and a bankruptcy

lawyer with a particular emphasis on restructuring and special situations transactions.  I

have guided numerous U.S. and European middle market companies through complex

financial restructurings, sale transactions and private placements.   I have advised

companies across a broad spectrum of industries including aviation, food, branded

consumer products, financial services, biotech/pharmaceutical, retail, automotive,

manufacturing and several others.  I am a member of the Board of Directors and on the

Executive Committee of the Turnaround Management Association, on the Board of

Directors of the American Bankruptcy Institute and a Fellow of the American College of

Bankruptcy.

### Disinterestedness of SSG

      7.    In order to prepare this declaration, I have taken various steps to determine

whether any conflict of interest exists that would preclude SSG from serving as financial

advisor and providing financial advisory services to the Committee.   In connection

therewith, I reviewed SSG's business records, databases and client relationship software to determine, among other things, (i) whether SSG already represents any other client in connection with the proposed new matter, (ii) whether SSG already represents any other client in a capacity that may be adverse to the proposed client, or whether the proposed representation might be adverse to the interest of such other client, and (iii) whether SSG has any connections with the Debtors, their creditors and other parties identified to me as parties in interest.

8.    To the best of my knowledge, except as otherwise set forth herein, SSG does not (a) hold or represent any interest adverse to the Committee on the matters upon which SSG is to be retained or (b) have any connection with the Debtors, creditors, any other party in interest, their respective attorneys and retained professionals, the United States Trustee or any other person employed in his office (to the extent identified to me).

9.    Based upon my review, SSG knows of no fact or situation that would represent a conflict of interest for SSG with regard to the Committee.

10.    In addition to the foregoing, SSG's employees may have business associations with, professional and social relationships with, or interests aligned with or adverse to, creditors or parties in interest, or their attorneys, accountants or advisors. As part of our practice, SSG provides services in cases, proceedings and transactions throughout the United States involving many different parties, and work together with many different parties, which may include creditors or parties in interest, or attorneys, accountants or other professional firms or advisors who may represent creditors or parties in interest in these cases. As far as I have been able to ascertain, none of these associations, relationships, or interests have any connection with these cases other than

SSG has worked on other non-related matters with Richards, Layton & finger, P.A. (co-counsel to the Creditor's Committee), J. H. Cohn (Financial Advisor to the Debtors) and Wollmuth Maher & Deutsch, LLP (co-counsel for the Debtors).

11.    I am not related to and, to the best of my knowledge, no other employee of SSG is related to any United States District Judge or United States Bankruptcy Judge for the District of Delaware or to the United States Trustee for this district or to any known employee of his office.

12.    To the best of my knowledge, no SSG employee is a creditor, equity security holder or an insider of the Debtors or their estates, and is not and was not, within 2 years before the date of the filing of the chapter 11 cases, a director, officer, or employee of the Debtors.    None of the representations described above are materially adverse to the interests of the Debtors, their estates, any class of creditors or equity security holders. Thus, to the best of my knowledge, SSG is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code.

### Professional Compensation

13.    SSG and the Committee entered into an Engagement Letter, effective as of January 27, 2010, pursuant to which SSG will act as the Committee's financial advisor if authorized by the Court. The terms and conditions of SSG's engagement are set forth in the Engagement Letter attached as Exhibit A to the Victor Declaration.

14.    Except as otherwise provided below, SSG intends to apply for compensation for professional services rendered in connection with these cases, and for reimbursement of actual and necessary expenses incurred, in accordance with the

applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the guidelines promulgated by the Office of the United States Trustee, and the local rules and orders of this Court, including the Administrative Compensation Order. SSG has agreed to accept as compensation such sums for the Debtors as may be allowed by the Court for fees incurred for professional services and for reimbursement of reasonable and necessary expenses.

15.    It is not the general practice of investment banking and financial advisory services firms to keep detailed time records similar to those customarily kept by attorneys and other professionals who are compensated on an hourly basis or maintain time on a "project category" basis. SSG, when formally retained in chapter 11 cases and when required by local rules, does, and in these chapter 11 cases will, keep time records describing its general daily activities, the identity of persons who performed such activities and the amount of time expended on each activity in hourly increments. For SSG to recreate detailed time entries for its personnel or to keep time records on a "project category" basis as required by the rules of this Court would be unduly burdensome and time-consuming. Thus, SSG requests that the local rules of this Court be modified, to the extent necessary, so as to allow its personnel to bill in these cases as described in this paragraph.

16.    Pursuant to the Engagement Letter, SSG: (a) shall receive a monthly fee (the "Monthly Fee") of $25,000 per month payable by the Debtors; and (b) submit an invoice to the Committee and the Debtors on the monthly anniversary of the entry of the Retention Order (as hereafter defined) for payment of the Monthly Fee and such invoice shall be due and payable upon receipt SSG's Monthly Fees shall be paid without the

necessity of filing interim applications for compensation. SSG shall receive a Success Fee of 2.5 percent of the total recovery to unsecured creditors. Notwithstanding the foregoing, the calculation of total recovery to unsecured creditors for purposes of determining the Success Fee shall not include recoveries from litigation. Such Success Fee shall be earned and payable upon closing of a Sale Transaction or, in the case of no Sale Transaction, then upon confirmation of a Plan of Reorganization. Such Success Fee shall be subject to court approval of a First and Final Application for Compensation. In addition, the Engagement Letter provides for reimbursement of reasonable out-of-pocket expenses incurred in connection with the provision of services thereunder. Such expenses include, but are not limited to, reasonable fees and expenses of SSG's legal counsel, travel and lodging expenses, word processing charges, messenger and duplicating services, facsimile expenses and other customary expenditures.

17.    SSG has agreed to invoice for these expenses in a manner and at rates consistent with charges made generally to SSG's other clients. Both SSG and the Committee recognize and acknowledge that the compensation proposed has been accepted by all parties based on their understanding of the proposed transaction. The fees to be paid to SSG pursuant to the terms of the Engagement Letter are subject to the standard of review provided in section 328 (a) of the Bankruptcy Code.

18.    SSG has not received a retainer in connection with these chapter 11 cases.

19.    Other than as set forth herein and in the Engagement Letter, no arrangement is proposed between the Committee and SSG for compensation to be paid in these cases.

20.    The Committee has been advised by SSG that it has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under section 504(b)(1) of the Bankruptcy Code.

* * * * * *

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: February 5, 2010

_____
J. Scott Victor

# EXHIBIT A



**SSG**
**CAPITAL ADVISORS, LLC**

January 27, 2010

The Official Committee of Unsecured Creditors of
AeroThrust Corporation

Attention:   Steven J. Solomon, Esquire (Counsel to the Committee)
             Gray Robinson, P.A.

Dear Mr. Solomon:

This agreement ("Engagement Agreement") will serve as the agreement between The Official Committee of Unsecured Creditors (the "Committee") of AeroThrust Corporation and AreoThrust Engine Leasing Holding Company (collectively "AeroThrust" or the "Debtors") in the Debtors' pending chapter 11 bankruptcy proceeding pending in the U. S. Bankruptcy Court of the District of Delaware, Case No. 09-14541 (jointly administered) (the "Chapter 11 Case") and SSG Capital Advisors, LLC ("SSG" or "Advisor") regarding the retention of SSG as investment banker and financial advisor to the Committee in the Chapter 11 Case. SSG will provide investment banking and related financial advisory services to the Committee in connection with: (a) the potential sale of all or part of the Debtor's assets or operations (a "Sale Transaction"); (b) analysis of alternatives to a Sale Transaction including, potentially, sponsorship of a stand-alone plan of reorganization ("Committee Plan") or negotiation with the Debtor on a Debtor sponsored plan of reorganization ("Debtor Plan") that would maximize the recovery of unsecured creditors in respect of their claims in the Chapter 11 Case; and (c) providing financial advisory services to the Committee throughout the Chapter 11 Case.

In particular, we have agreed as follows:

A.   **SSG's Role**

    1.   Review of Strategic Alternatives

        SSG will assist the Committee in reviewing its strategic reorganization alternatives, including the Debtors' efforts to complete a Sale Transaction or to formulate (with or without the support of the Debtor) a Committee Plan and/or negotiation with the Debtor on a Debtor Plan or a joint plan ("Joint Plan"). Specifically, SSG will assist the Committee in:

        •   Reviewing the Debtor's financial statements (historical and projected) and evaluating its financial performance and prospects;

Steven J. Solomon, Esquire
January 27, 2010
Page 2

- Analyzing the going concern value of the Debtors' business; and

- Determining the reorganization strategy that will produce the maximum recovery for unsecured creditors in the Chapter 11 Case.

2.   Sale Transaction

SSG will assist the Committee in evaluating the Debtors' ongoing effort to complete a Sale Transaction and the consequences of such a transaction for the recovery of unsecured creditors in the Chapter 11 Case. Specifically, SSG will assist the Committee in:

- Monitoring the status and execution of a the sale process conducted by the Debtor and its professionals;

- Assisting the Debtors and its professionals in execution in the execution of the sale process;

- Based on our extensive experience in the industry and special situations M&A, ensuring that the Debtors are presenting the opportunity for a Sale Transaction to prospective buyers who are the most likely to maximize unsecured creditors' recoveries;

- Assisting the Committee in evaluating the terms of any proposals to complete a Sale Transaction made by or to the Debtors;

- Assisting the Committee in evaluating the economic impact on unsecured creditors' recoveries of any Sale Transaction for which the Debtors seeks Bankruptcy Court approval; and

- Providing any litigation support and expert testimony related to the foregoing.

3.   Committee Plan/Debtor Plan/Joint Plan

Should the Committee determine that the interests of constituents would best be served by confirming a plan of reorganization that does not involve a Sale Transaction, SSG will assist the Committee in the financial analysis necessary to formulate and propose a Committee Plan and/or negotiate a Debtors' Plan or Joint Plan. Additionally, SSG will assist the Committee in arranging any financing necessary to implement such a Plan. Specifically, SSG will assist the Committee in:

- Analyzing the structure, feasibility, and economic terms of a Committee Plan, Debtors' Plan and/or Joint Plan;

- Assisting the Committee in formulating and negotiating the terms of such a Plan;

Steven J. Solomon, Esquire
January 27, 2010
Page 3

- Assisting the Committee in obtaining commitments for any debt or equity financing that would be required to implement such a Plan; and

- Providing litigation support and expert testimony related to the foregoing.

4.   Financial Advisory Services

SSG will assist the Committee with general financial advisory services throughout SSG's engagement hereunder, including:

- Reviewing AeroThrust's operations and financial condition;

- Provide expert testimony on behalf of the Committee in all aspects of SSG's engagement; and

- At the Committee's direction, SSG will investigate all potential voidable transactions.

B.   **SSG's Compensation**

SSG's fees for acting as investment banker to the Committee will consist of the following:

1.   Monthly Fees

SSG: (a) shall receive a monthly fee (the "Monthly Fee") of $25,000 per month payable by the Debtors; and (b) submit an invoice to the Committee and the Debtors on the monthly anniversary of the entry of the Retention Order (as hereafter defined) for payment of the Monthly Fee and such invoice shall be due and payable upon receipt.[1]   SSG's Monthly Fees shall be paid without the necessity of filing interim applications for compensation.

2.   Success Fees

SSG shall receive a Success Fee as follows:

- SSG shall receive a Success Fee of 2.5 percent of the total recovery to unsecured creditors. Notwithstanding the foregoing, the calculation of total recovery to unsecured creditors for purposes of determining the Success Fee shall not include recoveries from litigation. Such Success Fee shall be earned and payable upon closing of a Sale Transaction or, in the case of no Sale Transaction, then upon confirmation of a Plan of Reorganization. Such Success Fee shall be subject to court approval of a First and Final Application for Compensation.

---

[1] Upon entry of the Retention Order, SSG shall submit to the Debtors its initial invoice for Monthly Fees covering the period from the date hereof through the date of the Retention Order, calculated on a pro-rated basis.

\303762\1 - # 210674 v1

Steven J. Solomon, Esquire
January 27, 2010
Page 4

(3)     Expense Reimbursement

SSG shall:    (a) be entitled to reimbursement of its reasonable actual and
necessary out-of-pocket expenses incurred in providing services under this
Engagement Agreement; and (b) submit an invoice to the Committee and the
Debtors, from time-to-time, seeking reimbursement of such amounts, and such
invoice shall be due and payable upon receipt.

D.    **Term of Engagement**

This Engagement Agreement shall have a minimum term of ninety (90) days from the
date hereof and may thereafter be terminated by either party upon thirty (30) days
written notice to the other (the date on which the Engagement Agreement terminates,
the "Termination Date").   Upon the termination of the Engagement Agreement, neither
party shall have any further obligations to the other, except that:  (a) SSG shall remain
entitled to receive any accrued but unpaid Monthly Fees through the Termination Date
(prorated, as appropriate); (b) SSG shall remain entitled to reimbursement for any
accrued expenses of SSG prior to the termination date; and (c) if the Debtors complete
a Sale Transaction or confirms a Plan within six (6) months of the Termination Date,
SSG shall remain entitled to receive its Success Fee.

E.    **Other Matters**

The parties acknowledge that all of their respective rights and obligations pursuant to
this Engagement Agreement remain subject to the entry of an order (the "Retention
Order"), acceptable in form and substance to each party in their respective discretion,
approving the terms set forth herein.  The Committee shall use its best efforts to cause
the Retention Order to provide, among other things, that SSG's right to any of the
payments contemplated set forth herein shall:  (a) constitute an administrative claim in
the Chapter 11 Case; and (b) be payable as an expense of any Sale Transaction or
Plan.  The Committee shall promptly seek approval of the Retention Order.

SSG shall have the right to place advertisements in financial and other newspapers and
journals at its own expense describing its services to the Committee hereunder.

Any amendment, modification or other changes to this Engagement Agreement must be in
writing and signed by both parties to be enforceable.

Steven J. Solomon, Esquire
January 27, 2010
Page 5

Please indicate your acceptance of the foregoing by executing and returning the enclosed copy of this letter.

**SSG CAPITAL ADVISORS, LLC**

By: _____
    J. Scott Victor
    Managing Director

ACCEPTED:

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF AEROTHRUST CORPORATION**

By: _____    _____
                                 Date

Name: _____

Its: _____