**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| AeroThrust Corporation and AeroThrust | ) | Case No. 09-14541 (PJW) |
| Engine Leasing Holding Company, LLC, | ) | |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**Objection Deadline: August 26, 2010 at 4:00 p.m.
Hearing Date: September 2, 2010 at 2:00 p.m.**

**MOTION OF INTERIM TRUSTEE
TO EMPLOY HERITAGE GLOBAL PARTNERS AS AUCTIONEER, FOR APPROVAL
OF AUCTION PROCEDURES AND SALES, AND FOR RELATED RELIEF**

Jeoffrey L. Burtch, interim Chapter 7 trustee for the bankruptcy estates (the "Estates") of AeroThrust Corporation and AeroThrust Engine Leasing Holding Company, LLC (the "Debtors"), moves to employ Heritage Global Partners to approve auction procedures and sales (the "Motion"), and in support of this Motion respectfully represents that:

**JURISDICTION**

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

2. On December 27, 2009 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The cases are jointly administered pursuant to Bankruptcy Rule 1015(b).

3. A detailed description of the events leading up to these Chapter 11 filings is set forth more fully in the Affidavit of John F. Risko in Support of Chapter 11 Petitions and First Day Motions filed in these cases. Docket No. 3.

4.      On July 20, 2010, the cases converted to cases under Chapter 7 [Docket No. 410]. Jeoffrey L. Burtch was appointed as interim trustee on July 20, 2010, and serves as trustee (hereinafter, the "Trustee") pursuant to Section 701(c) of the Bankruptcy Code. A meeting of creditors is scheduled for September 1, 2010.

5.      Since July 21, 2010, the Trustee and his counsel have expended considerable amounts of time to understand the nature of the companies, and their prior business and assets, and the numerous business and legal issues that have faced the companies, and that exist at this time. This learning process is not finished and is ongoing. There are still many facts and issues concerning the AeroThrust companies about which the Trustee and his counsel are learning.

## THE AEROTHRUST ASSETS

6.      According to pleadings filed pre-conversion, AeroThrust Corporation ("AeroThrust") was primarily engaged in the sale of aircraft engines and provision of aircraft engine maintenance, report and overhaul services to commercial passenger airlines, air cargo carriers and the United States military. The Debtors' headquarters and a 140,000 sq. ft. engine shop were located in South Florida (hereinafter, the "Facility"), at the Miami International Airport. Located at that Facility are substantially all of the physical assets of AeroThrust (hereinafter, an "ATC Asset," or "ATC Assets").[1]

7.      PNC Bank, National Association ("PNC") is a major and asserted secured creditor in these jointly administered cases. The Trustee and PNC have conferred about a liquidation process of the ATC Assets designed to maximize the value of those assets, and have mutually agreed upon the process discussed and proposed by this Motion.

---

[1] For the purposes of this Motion and the Auction, the ATC Assets do not include physical books and records of the Debtors, computers, servers and electronic information of the Debtors. Furthermore, the ATC Assets do not include certain parts and engines for which the Debtors do not hold title.

## RELIEF REQUESTED CONCERNING EMPLOYMENT AND COMPENSATION, AND BASIS THEREFORE

8. The Trustee has been informed that Heritage Global Partners ("HGP") is a leading, world-wide full service, global auction and asset advisory firm. Its managing partners have more than a half-century of experience and have expertise in virtually every industry sector and have conducted over 4,000 industrial auctions, spanning 30 countries. HGP's staff brings significant industrial, technical, and professional experience in the asset advisory and auction practice. Of particular importance is that HGP and its network have a history in representing aerospace clients and their prime sub-contractors. Such representation has included large sales and brokerage of major machine tools, pneumatic toggle, hydraulic, OBI, straight side, double action straight side, gap frame presses, CNC lathes, CNC turning centers, compression tooling, press brakes, bridge and jib cranes, tool cribs, and much more.

9. The Trustee seeks to employ and compensate HGP on the terms and conditions set forth in a letter agreement for the purposes of liquidating the ATC Assets. A copy of that letter agreement is attached as Exhibit 1 to this Motion[2] (the "Auction Agreement").[3]

10. As stated in the Auction Agreement, Counsel RB Capital LLC ("Counsel RB"), and Hilco Industrial, LLC ("Hilco") will assist HGP in this matter. Counsel RB is an asset recovery firm specializing in the auction and liquidation of industrial equipment, wholesale and retail inventories, accounts receivable and intellectual property assets. Hilco is a worldwide leader in distressed asset dispositions and has units specializing in industrial auctions and in aerospace

---

[2] The letter agreement references an Exhibit A, which is a voluminous list of equipment, inventory, and other itemized assets. To save costs, that Exhibit A is being filed with the Court, but not served on parties in interest. Any party in interest may obtain a complete copy of Exhibit A by email by contacting the undersigned at asinger@coochtaylor.com.

[3] Prior to conversion, the Debtors filed a motion to employ HGP. The Trustee understands that because of the order of conversion, the Chapter 11 Debtors' employment motion became moot and was never presented to the Court for consideration.

assets. Accordingly, Counsel RB and Hilco have extensive experience in the areas of distressed asset management, liquidation and auctions, and bring additional expertise to the auction process.

11. To the best of the Trustee' knowledge, none of Counsel RB, Hilco and HGP represent or hold an interest adverse to the Debtors or their estates and each is a disinterested party within the meaning of sections 101(14) and 327(a) of the Bankruptcy Code. Affidavits of disinterestedness are attached as Exhibit 2, Exhibit 3, and Exhibit 4 to this Motion.

12. The major terms of the Auction Agreement are as stated below in paragraphs 13 through 17.

13. The Auction[4] will commence on Monday, September 13, 2010, and occur over an approximately two-day period.

14. Counsel RB, Heritage Global Partners, Inc. and Hilco Industrial, LLC (together, the "Auctioneer") are not charging the estates any seller's commission. The Auctioneer will charge a buyer premium equal to fifteen percent (15%) of the aggregate gross proceeds for the sale of an ATC Asset, or a lot of ATC Assets, payable by the buyers of those asset or assets (the "Buyer's Premium"). A Buyer's Premium is a standard in the auction industry. The Chapter 7 estates are not responsible for any unpaid portion of the Buyer's Premium. The Auctioneer will rebate seven percent (7%) of the collected Buyer's Premium to the Trustee on behalf of the Chapter 7 estate of AeroThrust, and that rebate of 7% will be added to the gross proceeds payable to the estate. Therefore, the Auctioneer's total compensation for these services will be eight percent (8%) of the collected Buyer's Premium. That amount is shared by and between HGP and Counsel RB and Hilco.

---

[4] Capitalized terms not defined in this Motion shall have the meaning ascribed to them in the Auction Agreement

15. The Auctioneer also has a right of reimbursement of actually incurred expenses (such as labor and advertising) up to the amount of $150,000.00, and upon the terms and conditions stated in the Auction Agreement.

16. None of HGP, Counsel RB or Hilco have any rights of compensation, or reimbursement of expenses from the Chapter 7 estates except as stated above.

17. There is no indemnification provision in favor of the Auctioneer.

18. In summary, the Trustee believes the terms are reasonable, in accordance with applicable industry standards and legal standards, and that the Auctioneer can be employed and compensated on the terms set forth in the Auction Agreement pursuant to 11 U.S.C. § 327(a) and 11 U.S.C. § 328(a).

## RELIEF REQUESTED CONCERNING AUCTION SALE AND PROCEDURES, AND BASIS THEREFORE

19. The Trustee seeks approval of the auction procedures and auction sales, as discussed in the Motion and Auction Agreement.

20. With respect to auction procedures, the Auction Agreement contains various procedures designed to maximize the net value of the ATC Assets. Paragraph 2 states:

> At all times the Auction will be conducted on site and over the Internet using webcast technology. Auctioneer shall offer the Assets for sale both in lots, and by the piece, in an effort to maximize the Gross Proceeds. Seller agrees that Auctioneer may use the name of the Debtor AeroThrust Corporation and or its street address and logo in the Auctioneer's advertising in accordance with Auctioneer's customary practice, including on its Website as well as in any press release, solely to perform services under this Agreement.

All ATC Assets in the Auction shall be sold to the highest and best bidder (subject only to the purchaser's timely payment in full and removal of purchased ATC Assets). The Trustee, in consultation with PNC Bank, N.A. ("PNC"), shall determine the auction process that results in

the highest and best aggregate bid for the ATC Assets. Auctioneer understands that Seller provides no removal services for any purchased Asset.

21. Paragraph 9 states:

> The purchaser shall be solely responsible for rigging and shipping the purchased Asset. Under no circumstances shall Auctioneer be responsible for any loss, damage or destruction associated with asset removal or disconnection, except to the extent that such loss damage or destruction results from the negligence of Auctioneer. The removal of Assets from the Premises by successful bidders must be completed no later than September 27, 2010.

22. The procedures, as stated in paragraphs 2, 9, and elsewhere in the Auction Agreement are hereinafter referred to as the "Auction Procedures."

23. The Trustee believes it is in the best interests of the Aerothrust Estate and its creditors that the ATC Assets be liquidated at the earliest possible time. Such liquidation will allow the Trustee to minimize carrying costs such as insurance and utilities, which only serve to reduce the net return from the liquidation of the ATC Assets. The timing of the Auction strikes a balance between these carrying costs, and providing the Auctioneer with sufficient time to prepare for and advertise the Auction. While the Trustee fully contemplates and desires that the Auction date will be September 13, 2010, the Trustee seeks authority to change the Auction date without further Court Order with the written consent of PNC and the Auctioneer. Each successful bidder for a lot of property must remove that lot as soon as possible after payment and in every event on or before September 27, 2010. The Trustee further seeks Court permission to utilize any other reasonable procedure designed to effectuate the sales and to maximize the value of the ATC Assets.

24. The Trustee believes these Auctions Procedures to be customary in the industry, reasonably designed to maximize the net value of the Assets, and asks this Court to approve those Auction Procedures.

25. With respect to auction sales, the Auction Procedures contemplate various sales of assets to individual purchasers.[5] Each of those sales will be on an as is, where is basis, and with no warranties of merchantability and fitness for a particular purpose. Each of sales of the Assets at the Auction will be free and clear of all existing liens, claims, interests, and encumbrances. The Auctioneer will directly collect all applicable sales taxes due on the auction sales and will be responsible to transmit these taxes to state and/or local tax collection authorities. The terms of each sale as stated in this paragraph 25 are hereinafter referred to as the "Auction Sales."

26. Section 363(b) of the Bankruptcy Code provides that a trustee: "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." To approve a use, sale or lease of property other than in the ordinary course of business, the court must find some articulated business justification. *See, e.g., In re Martin (Myers v. Martin)*, 91 F. 3d 389, 395 (3d Cir. 1996); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F. 2d 143 (3d Cir. 1986) (implicitly adopting the sound business judgmen test of *Lionel Corp*. and requiring good faith); *In re Delaware and Hudson Ry. Co*., 124 B.R. 169 (D. Del. 1991) (concluding that the Third Circuit adopted the sound business judgment test in the *Abbotts Dairies* decision). For all the reasons stated in this Motion, the Trustee believes the sale of the property demonstrates sound business judgment, and utilizing procedures designed to maximize the value of the ATC Assets.

27. Under section 363(f) of the Bankruptcy Code, a trustee may sell property of the estate "free and clear of any interest in such property" if: (i) such a sale is permitted under applicable non-bankruptcy law; (ii) the party asserting such a lien, claim or interest consents to such sale; (iii) the interest is a lien and the purchase price for the property is greater than the aggregate

---

[5] It is possible that the outcome of the Auction Procedures is that one purchaser shall have bid the highest and best offer for all the ATC Assets, in which case there shall be only one successful purchaser. The Trustee encourages these types of offers for all the ATC Assets.

amount of all liens on the property; (iv) the interest is the subject of a bona fide dispute; or (v) the party asserting the lien, claim or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest. 11 U.S.C. § 363(f); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that section 363(f) of the Bankruptcy Code is written in the disjunctive; therefore, a court may approve a sale "free and clear" provided at least one of the subsections is met). PNC has consented to the Auction Procedures and the Auction Sales. Taxes owed to taxing authorities will be collected by the Auctioneer, and paid by the Auctioneer. Therefore Section 363(f) is satisfied.

28. In connection with Local Rule 6004-1, the Trustee incorporates paragraphs 1-27 above, and further states as follows:

> The Gross Proceeds of the Auction, after any payment of reimbursable expenses to the Auctioneer, and the Seller Rebate, will be held by the Trustee pending further order of this Court.
>
> The Sale order seeks relief from the ten-day stay imposed by Rule 6004(h) and other Bankruptcy Rules.

29. Relief similar to that requested by this Motion has been routinely granted in this jurisdiction. *E.g.*, *In re USDigital, Inc.*, Case No. 07-10374 (CSS), Docket No. 77 [Re DN 62] (Order granting Chapter 7 trustee motion to employ Auctioneer and for approval of related auction procedures); *In re DiGangi*, Case No. 08-12020 (BLS), Docket No. 30 [Re DN 19] (Order granting motion of interim trustee to employ Auctioneer and approving Section 363 sales at auction).

30. The Trustee fully reserves all his rights under 11 U.S.C. § 506(c) with respect to the monies that this Motion contemplates he will be receiving and holding. PNC and the Trustee have engaged in numerous communications and negotiations concerning a resolution of various

lender-trustee issues and relating to those monies. The Trustee is cautiously optimistic that in the near future, formal pleadings will be filed with respect to a consensual resolution. Relatedly, the Trustee reserves the right to withdraw this Motion at any time prior to entry of an order approving this Motion.

WHEREFORE, the Trustee requests that the Court enter the attached form of order.

Dated: August 12, 2010

COOCH AND TAYLOR, P.A.


_/s/ Adam Singer_
Adam Singer, Esquire (De. No. 2472)
The Brandywine Building
1000 West Street, 10th Floor
Wilmington, DE 19801
Telephone: (302) 984-3800

Counsel to Jeoffrey L. Burtch, Interim Trustee

(Employment Application Pending)